## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUTUMN HARTZELL | CASE NO. 3:14-cv-00936- GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 9, 10, 11, 12 |

## <u>MEMORANDUM</u>

### I.    Procedural Background

On March 22, 2011, Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). (Tr. 125-41). On July 14, 2011, the Bureau of Disability Determination denied these applications (Tr. 56-73), and Plaintiff filed a request for a hearing on July 29, 2011.  (Tr. 84-85). On October 19, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 26-55). On November 15, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 9-25). On December 6, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 7-8), which the Appeals denied on March 26, 2014, thereby affirming the decision of the ALJ as the "final decision" of the

Commissioner. (Tr. 1-6).

On May 15, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On July 31, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On September 10, 2014, Plaintiff filed a brief in support of his appeal ("Pl. Brief"). (Doc. 11). On October 1, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 12). On May 4, 2015, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 14, 15, 16). The matter is now ripe for review.

## II.    Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y*

*of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III.   Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2)

whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### IV. Relevant Facts in the Record

Plaintiff was born on August 14, 1982 and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 20). 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as a nurse assistant, cashier, and claims clerk. (Tr. 20, 51).

Plaintiff and her boyfriend asserted that she was unable to work due to depression, anger issues, and explosive behavior. (Tr. 29-53, 191-211). They reported fairly limited activities of daily living. *Id*. At the hearing, she testified that she could not work because of the medicine she was on and her explosive behavior. (Tr. 30). She explained that her medications made her sleepy. (Tr. 31-32). She testified that she left her past work because she "wasn't getting paid right" and her checks were delayed. (Tr. 34). She testified that she left another job when it was sold. (Tr. 36). She indicated that she left another job because her "ex-husband made [her]." (Tr. 38). She testified that she had not had any mental health hospitalizations since January of 2011 and was able to read books, do dishes, and vacuum. (Tr. 47).

In June of 2010, Plaintiff reported that she was "not depressed" but would like something for "her nerves" because she was a stay-at-home mother with five children. (Tr. 286). In a form submitted to the Pennsylvania Department of welfare, she stated that she voluntarily quit working in October of 2010 because her employer wanted her to commit Medicare fraud. (Tr. 232). Her employer responded that she walked out "stating she 'felt like putting her hands around the neck' of a coworker." (Tr. 232).

Plaintiff underwent a nine-day psychiatric hospitalization in January 2011 for suicidal ideation. (Tr. 250-54). On discharge she was diagnosed with probable

Bipolar II Disorder and Intermittent Explosive Disorder and assessed to have a Global Assessment of Functioning ("GAF") of 60 (Tr. 254).

On March 1, 2011, she established outpatient psychiatric care with Dr. Taswir. (Tr. 261). Examination indicated only constricted affect and irritable mood. (Tr. 261-62). He diagnosed bipolar disorder and personality disorder, not otherwise specified, and assessed a GAF of 50. (Tr. 261-62). Treatment through July of 2011 indicated GAF scores of 50. (Tr. 317-19). At subsequent every visit, Plaintiff's speech, mood, stream of thought, content of thought, and executive function were normal. (Tr. 317-19). Her affect was alternatively noted to be restricted and normal. *Id.*

On July 14, 2011, Dr. Richard Small, Ph.D., reviewed Plaintiff's file and authored a medical opinion that Plaintiff could perform the basic mental demands of competitive work. (Tr. 69).

On August 16, 2011, Dr. Taswir authored a medical opinion. (Tr. 332). (Tr. 352). He identified symptoms of anhedonia, feelings of guilt or worthlessness, mood disturbance, persistent disturbances of mood or affect, emotional withdrawal or isolation, emotional lability, flight of ideas and sleep disturbance (Tr. 329). He also cited Plaintiff's impaired coping skills and social skills and limited frustration tolerance (Tr. 331). He opined that Plaintiff was unable to meet competitive standards in  maintaining attention for a two hour period, maintaining regular

attendance and being punctual within customary usually strict tolerances, sustaining an ordinary routine without special supervision, making simple work related decisions, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, interacting appropriately with the general public, and handling semiskilled or skilled work. (Tr. 330-31). He opined that Plaintiff had no useful ability to function in working in coordination with or proximity to others without being unduly distracted, completing a normal work day and work week without interruptions from psychologically based symptoms, getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes and dealing with normal work stress. (Tr. 330). He opined that Plaintiff would be absent from work more than four days a month and that her impairment would last at least twelve months. (Tr. 331). On October 21, 2011, he wrote that she was "unable to work at this time due to her bipolar disorder." (Tr. 321).

On July 29, 2011, Plaintiff's counselor, Ms. Fox, also authored an opinion. (Tr. 323-25). She identified identical symptoms as Dr. Taswir's opinion. (Tr. 324). She identified work-preclusive mental limitations. (Tr. 325). She opined that Plaintiff would be absent from work more than four times per month. (Tr. 326). She noted that Plaintiff reacted with anger, frustration, and hostility to daily stressors and "continue[d] to struggle with bouts of severe depressive symptoms

that significantly affect her energy level, her motivation level and her overall well being." (Tr. Pg. 323, 327).She indicated that Plaintiff's GAF had increased to 55. (Tr. 323).

In September of 2011, Plaintiff received psychiatric clearance to take Chantix. (Tr. 295). She denied psychiatric symptoms and stated that her mood was stable. (Tr. 295).

By October of 2011, within ten months of Plaintiff's onset date, Dr. Taswir had also increased her GAF to 55. (Tr. 316). Speech, affect, mood, stream of thought, content of thought, and cognitive function were normal. (Tr. 316). He noted that Plaintiff was "doing well" and her mood was "stable." (Tr. 316). Plaintiff subsequently reported being frustrated by the initial denial of benefits under the Act, but mental status examination remained entirely normal and her GAF remained at 55. (Tr. 315). By December of 2011, Plaintiff reported that she had "no issues" and her GAF was increased further to 60. (Tr. 314). Plaintiff's GAF remained a 60 in February of 2012, her mental status examination was normal, and Dr. Taswir noted that she was "doing well." (Tr. 313).

At a primary care visit for headaches in January of 2012, Plaintiff denied constitutional and other neurologic symptoms. (Tr. 297). No mention of psychiatric complaints appears in a primary care visit from February of 2012. (Tr. 300).

On November 15, 2012, the ALJ issued the decision. (Tr. 21). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 26, 2011, the alleged onset date. (Tr. 14). At step two, the ALJ found that Plaintiff's bipolar disorder, depression, and intermittent explosive disorder were medically determinable and severe. (Tr. 14). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 15). The ALJ found that Plaintiff had the RFC to:

> [P]erform a full range of work at all exertional levels except the claimant must avoid hazards such as unprotected heights and machinery moving about on the jobsite floor; must avoid more than occasional changes to a routine work setting; must avoid more than occasional interaction with the public, coworkers, and supervisors; must not be required to work as part of a team; and is expected to have the ability to sustain attention and concentration for no more than 90% of a normal workday

(Tr. 16).

A step four, the ALJ found that Plaintiff could not perform past relevant work. (Tr. 19). At step five, in accordance with the VE testimony, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 20). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 21).

## V.    Plaintiff Allegations of Error

### A. The ALJ's assignment of weight to the medical opinions

Plaintiff asserts that the ALJ erred in failing to afford controlling weight to

her treating source opinions. Plaintiff's treating sources opined that she had work-preclusive mental impairments. (Tr. 329-35). A state agency physician opined that she could perform the basic mental demands of competitive work. (Tr. 60). Plaintiff also asserts that the ALJ failed to give sufficient explanation for the assignment of weight to the medical opinions. (Pl. Brief at 10-12).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Opinions can come from various sources, including treating physicians, examining physicians, and non-examining physicians. 20 C.F.R. §§ 404.1527(c)(1)-(2). "Regardless of its source, [the Commissioner] will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). If a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

When the Commissioner does not give a treating "opinion controlling weight under paragraph (c)(2) of this section, [the Commissioner] consider[s] all of the following factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(c). Specifically, "[w]hen [the Commissioner does] not give the

treating source's opinion controlling weight, [the Commissioner] appl[ies] the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of [Section 404.1527], as well as the factors in paragraphs (c)(3) through (c)(6) of [Section 404.1527] in determining the weight to give the opinion." 20 C.F.R. § 404.1527(c)(2).

Section 404.1527(c)(2)(i) provides that, "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." *Id.* Section 404.1527(c)(2)(ii) provides that "more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." *Id.* Section 404.1527(c)(1) provides that, "[g]enerally, [the Commissioner] give[s] more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." *Id.*

Pursuant to 20 C.F.R. §404.1527(c)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion" and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." Pursuant to 20 C.F.R. §404.1527(c)(4), "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."

Pursuant to 20 C.F.R. §404.1527(c)(5), more weight may be assigned to specialists, and 20 C.F.R. §404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion."

A non-treating opinion may be assigned more weight than a treating opinion. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (state agency physicians are "highly qualified" and "experts" in social security disability evaluation.). The Regulations provide that, "[w]hen the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if *it* were from a nontreating source." 20 C.F.R. § 404.1527(c)(2)(i) (emphasis added). Thus, when a treating source opinion is not given controlling weight, it does not trump all opinions from a nontreating source. It merely receives more weight than it otherwise would if it were authored by a non-treating physician. However, if the examining or non-examining opinion is better supported, more consistent with evidence, or authored by a specialist, then it may be entitled to greater weight than a treating opinion. As the Third Circuit explained in *Jones v. Sullivan*, 954 F.2d 125 (3d Cir. 1991):

> Jones next argues that the law of this Circuit required the ALJ to adopt the judgment of Jones's treating physicians, who opined that Jones's illnesses prevent him from maintaining gainful employment and cause him severe pain. Jones claims that the ALJ substituted the ALJ's own lay observations of Jones's condition for the findings of Jones's treating physicians, thus violating *Frankenfield v. Bowen*, 861

F.2d 405 (3d Cir.1988). In *Frankenfield*, we established that, in the absence of contradictory medical evidence, an ALJ in a social security disability case must accept the medical judgment of a treating physician. However, the opinions offered by Jones's treating physicians were conclusory and unsupported by the medical evidence, and failed to explain why ailments that had plagued Jones for decades did not incapacitate him until 1987. Further, these opinions were not uncontradicted. After Jones applied for reconsideration of the initial rejection of his claim, two physicians in the state agency evaluated the medical findings of Jones's treating physicians and concluded that those findings did not reveal any condition that would preclude gainful employment. In light of such conflicting and internally contradictory evidence, the ALJ correctly determined that the opinions of Jones's treating physicians were not controlling. *See, e.g.*, *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir.1990); *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir.1985).

*Id*. at 128-29. *See also Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (An ALJ "may choose whom to credit" when a treating physician opinion conflicts with a non-treating physician opinion, and may "reject 'a treating physician's opinion outright…on the basis of contradictory medical evidence.'") (quoting *Plummer,* 186 F.3d at 429); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.,* 20 C.F.R. § 404.1527(d)(1)-(2)*,* '[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity'") (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir.2011)).

Here, Dr. Taswir's opinion and Ms. Fox's statement were not entitled to controlling weight because they were contradicted by Dr. Small's opinion. (Tr. 69).

They were also contradicted by the subsequent assessment of GAFs of 55 and 60, notation that Plaintiff's mood was stable and she was doing well, and her psychiatric clearance for Chantix, when she denied psychiatric complaints. *Supra.*

The ALJ explained that Dr. Taswir's October 2011 opinion was inconsistent with later treatment notes and wad on an issue reserved to the commissioner. (Tr. 18). The ALJ explained that his August of 2011 opinion was rendered "within 8 months of the claimant's alleged onset date and two months before the claimant's noted improvements in overall functioning and response to medications." (Tr. 18). The ALJ explained that Ms. Fox's opinion was inconsistent with the later treatment notes, was not an acceptable medical source, and did not furnish any medical records to provide support for her opinion. (Tr. 18). As discussed above, the ALJ cited to contradictory medical evidence in the form of Dr. Small's opinion. (Tr. 69). Plaintiff does not sufficiently address the ALJ's prime contention, which is that her providers opined that she no longer suffered serious impairments within ten months of her onset date, as evidence by her GAF scores and treatment record. (Pl. Brief). These are sufficient reasons to assign less weight to her treating opinions. In *Griffin*, the Court held that:

> [T]he ALJ reasonably determined that Dr. James's opinion was inconsistent with other substantial medical evidence in the record. As an initial matter, Dr. James's conclusion was inconsistent with his own treatment notes, which confirmed Griffin's improved, post-operative cardiac function, and inconsistent with other medical evidence in the record, which indicated that Griffin's heart rate and blood pressure

were normal. Further, imaging techniques did not reveal an enlarged heart, which would have limited Griffin's ability to exert herself physically. Finally, as part of the evidence inconsistent with Dr. James's opinion, the ALJ considered an assessment completed by Dr. Finch, which, unlike that of Dr. James, addressed the issue of functional limitations. After reviewing the medical evidence in the record, Dr. Finch concluded that Griffin retained the capacity to perform "light work." (App.272–77.) Thus, given this substantial evidence indicating that Griffin retained the capacity for light work such as bookkeeping, the ALJ did not err in declining to assign controlling weight to Dr. James's opinion.

*Griffin v. Comm'r Soc. Sec.*, 305 Fed.Appx. 886, 891-92 (3d Cir. 2009). *See also*

*Plummer v. Apfel*, 186 F.3d 422, 430 (3d Cir. 1999) (ALJ properly rejected

physician's opinion because it was inconsistent with his treatment record, which

indicated less limitations that the opinion and that claimant's condition had

"improved"); *cf. Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir.

2008) (treatment notes should not be used to discount a treating physician's

opinion where treatment notes did not address functional ability).

Plaintiff asserts that the ALJ failed to consider various factors under the

Regulations, specifically Dr. Taswir's treating relationship and his status as a

specialist. (Pl. Brief at 10-11). Plaintiff does not cite any evidence that the ALJ

failed to "consider" this factor. (Pl. Brief). Plaintiff also asserts that the ALJ failed

to cite contradictory medical evidence. (Pl. Brief at 12).

The Regulations require the ALJ to "consider" each factor in assigning

weight to the medical opinions. 20 C.F.R. §404.1527(c). However, "there is a

distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-3p. *See also Phillips v. Barnhart,* 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") *quoting Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998). Thus, an ALJ must provide some written explanation for the assignment of weight, but does not need to cite each factor considered in the analysis. *See Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804-05 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include "good reasons ... for the weight ... give[n] [to the] treating source's opinion"—not an exhaustive factor-by-factor analysis. Here, the ALJ acknowledged Dr. Wakham's role as Francis's "treating family osteopath." In assigning no weight to his opinion, the ALJ cited the opinion's inconsistency with the objective medical evidence, Francis's conservative treatment and daily activities, and the assessments of Francis's other physicians. Procedurally, the regulations require no more.") (internal citations omitted).

If explanation allows meaningful judicial review, it suffices. *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 305 (3d Cir. 2013) (Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir.

2004) (ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."); *Hur v. Comm'r Soc Sec.*, 94 F. App'x130, 133(3d Cir. 2004) ("There is no requirement that the ALJ discuss in its  opinion every tidbit of evidence included in the record").

Here, as discussed above, the ALJ's explanation sufficed for meaningful review. *Supra.* The ALJ provided specific explanations supported in the record and cited to specific treatment notes that contradicted the opinions. *Supra.* Thus, the Court finds no merit to this allegation of error.

Thus, the Court finds no merit to this allegation of error. A reasonable mind could accept the above-described explanation and evidence as adequate, and Plaintiff has no provided no reason to disturb these conclusions. Substantial evidence supports the ALJ's assessment. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).[1]

## B. Credibility Assessment

Plaintiff asserts that the ALJ erred in finding her less than fully credible in

---

[1] Plaintiff asserts that the ALJ was obligated to recontact Dr. Taswir pursuant to 20 C.F.R. 404.1512(e). However, that regulation only requires an ALJ to recontact a physician if the available evidence is insufficient to determine the claim. *Id.* Here, Dr. Small's opinion and the treatment notes provided sufficient evidence to determine the claim. Thus, the Court finds no merit to this allegation of error.

light of her activities of daily living. (Pl. Brief at 13). Plaintiff asserts that the ALJ erred in finding her boyfriend less than fully credible because daytime drowsiness is not incompatible with problems sleeping. (Pl. Brief at 14-15). Plaintiff concludes that the ALJ failed to sufficiently explain the credibility finding. (Pl. Brief at 16).

When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P. Then:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7P; *see also* 20 C.F.R. § 416.929. "Under this evaluation, a variety of factors are considered, such as: (1) 'objective medical evidence,' (2) 'daily activities,' (3) 'location, duration, frequency and intensity,' (4) medication prescribed, including its effectiveness and side effects, (5) treatment, and (6) other measures to relieve pain." *Daniello v. Colvin*, CIV. 12-1023-GMS-MPT, 2013 WL 2405442 (D. Del. June 3, 2013) (citing 20 C.F.R. § 404.1529(c)). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p.

Plaintiff asserts the ALJ erred in relying on her activities of daily living. (Pl. Brief at 13-18). However, the ALJ also found her to be less than fully credible because "[t]he medical evidence does not support the claimant's allegations," and she made inconsistent claims regarding her work history. (Tr. 18-19). The ALJ properly concluded that objective medical evidence failed to support her claims, noting the GAF scores, clinical observations (which include normal mental status examination and her denial of psychiatric complaints when cleared for Chantix), and noting the course of treatment did not support her claims. (Tr. 19). The ALJ also properly relied on Plaintiff's inconsistent claims. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p. Plaintiff does not seriously address these rationales. Thus, even if the ALJ erred in relying on her activities of daily living, a reasonable mind could accept the above-described explanation and evidence as adequate, and Plaintiff has no provided no reason to disturb these conclusions. Substantial evidence supports the ALJ's credibility assessment. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Plaintiff tangentially notes that she appeared unrepresented at the hearing, although her counsel had requested it be rescheduled. (Pl. Brief at 1). The Court construes this as a challenge to the ALJ's development of the record. However, a challenge to the development of the record must allege prejudice, as demonstrated

by evidentiary gaps that exist as a result of the failure to develop the record. *See Coe v. Astrue*, 3:07-CV-0500, 2008 WL 818948 (M.D. Pa. Mar. 25, 2008); *McCurry v. Astrue*, CIV.1:CV-07-1235, 2008 WL 2914368 (M.D. Pa. July 23, 2008). Here, as discussed above, the record contained sufficient evidence to decide the claims without evidentiary gaps. Thus, the Court finds no merit to this allegation of error.

## VII. Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the

relevant evidence as adequate. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.

Dated: September 30, 2015 _____*s/Gerald B. Cohn*_____
GERALD B. COHN
UNITED STATES MAGISTRATE JUDGE